FREDERICK ENNEKING ET AL., Respondents, *v.* LEOPOLD STAHL ET AL., Appellants.

### November 23, 1880.

Where a debtor, by false representations, induces his creditors to make a composition agreement, the innocent creditor may subsequently sue upon the original indebtedness and recover the full amount, less the sum paid under such agreement, without rescinding the agreement; and this, irrespective of whether the debt was due at the date of the composition.

APPEAL from the St. Louis Circuit Court, LINDLEY, J. *Affirmed.*

THOROUGHMAN & WARREN and PATRICK & FRANK, for the appellants: In order to a recovery there must have been a rescission, by placing the parties in *statu quo*.— *Parker* v. *Marquis*, 64 Mo. 35; *Owens* v. *Rector*, 44 Mo. 389; *Jarrett* v. *Morton*, 44 Mo. 275; *Pearsall* v. *Chapin*, 44 Pa. St. 9; *Jewitt* v. *Petit*, 4 Mich. 508; *Whiteside* v. *Simon*, 10 Hun, 218. The release by the deed of composition extinguished the debt.— *McCrea* v. *Purmort*, 16 Wend. 474; *Strong* v. *Dean*, 55 Barb. 343; *Sherborne* v. *Goodwin*, 44 N. H. 271.

COLLIER & MUENCH, for the respondents: Composition

agreements do not fall within the common rules governing the rescission of contracts. A creditor who has cause to overthrow such an agreement signed by him, on account of fraud practised by the debtor in obtaining his signature, can retain the dividend received by him under the agreement, credit the same upon the original debt, and recover the balance thereof in a suit upon such original demand. — *Bank* v. *Hoeber*, 8 Mo. App. 171; *O'Shea* v. *Lead Co.*, 42 Mo. 397; *Stuart* v. *Blum*, 28 Pa. St. 225; *Green* v. *Shriver*, 53 Pa. St. 259; *Crandall* v. *Cochran*, 3 N. Y. S..C. (T. & C.) 203; *Gilmore* v. *Thompson*, 49 How. 198; *Swing* v. *Gale*, 28 Ind. 486; *Partridge* v. *Messer*, 14 Gray, 180; *Frost* v. *Gage*, 6 Allen, 50; *Case* v. *Gerrish*, 15 Pick. 50; *Perkins* v. *Lockwood*, 100 Mass. 249; *Hester* v. *Cahn*, 73 Ill. 296; *Reynolds* v. *French*, 8 Vt. 85; *Pierce* v. *Wood*, 23 N. H. 519; *Jackson* v. *Hodges*, 24 Md. 472.

LEWIS, P. J., delivered the opinion of the court.

The plaintiffs sued by attachment the defendants, Leopold Stahl and Bernard Abrams, the present appellants, and Alvina Abrams, wife of Bernard Abrams, for a balance of $818.87, due on account of goods sold and delivered. The suit was afterwards dismissed as to Alvina Abrams. The answer set up a composition agreement entered into by the defendants with their creditors, including the plaintiffs, whereby all the claims were to be settled at fifty cents on the dollar. It was averred that the plaintiffs' claim had been settled by the payment of thirty per cent in cash, and the remaining twenty per cent in four promissory notes. The plaintiffs replied that the alleged composition agreement was false, fraudulent, and void, and that the plaintiffs were not bound thereby to any effect whatever. The notes which had been given were tendered back in the pleadings, and the cash paid under the composition was credited on the original account, thus leaving due the balance sued for. There was a good deal of testimony, direct and positive in

its character, tending to prove that at the time of the com-
position the defendants had concealed large amounts in
goods and money, and that the composition was brought
about by their fraudulent representations of insolvency.
There was also testimony, of a more indirect description,
relating to the amount of business done by the defendants,
and other circumstances from which it might be inferred
that their condition was better than as represented to their
creditors.   To meet these indirect proofs, the defendants
offered to show that they had paid out large sums to cred-
itors during the same period.   This testimony was excluded,
and this action of the court is assigned for error.   It may
be that the proposed testimony was not wholly irrelevant
to the matter of inquiry; but in view of the mass of evi-
dence already before the jury, its bearing was so remote and
inconsequential that its introduction could not have had the
least influence upon the result.   There can be no serious
claim for a reversal on account of its exclusion.

At the close of the plaintiffs' case the defendants asked for
the following instruction, which was refused : —

"The court instructs the jury that, from the evidence,
the plaintiffs are not entitled to recover, (1) because they
must rescind the whole contract of compromise before
recovering; (2) because it has not been shown that the
plaintiffs have sustained any loss by reason of anything
done by defendants."

After all the testimony was heard, the court instructed
for the plaintiffs as follows : —

"The court instructs the jury that if they shall find
from the evidence that at or immediately prior to the time
when the composition agreement (read in evidence) was
signed by the plaintiffs, L. Stahl & Co. furnished state-
ments and made representations as to the condition of their
estate and affairs which formed the basis and operated as
an inducement to said plaintiffs to sign said agreement;
and the jury shall further find from the evidence that said

firm of L. Stahl & Co. intentionally withheld from or misrepresented to plaintiff any material fact as to the condition of their estate, and that plaintiffs signed said agreement under a misapprehension or mistake (in which they were knowingly left by said Stahl & Co.) as to the condition or amount of said estate, then plaintiffs had a right to treat said agreement as void and of no effect; and they having so avoided the same, the jury should find for plaintiffs.

" The court further instructs the jury that any misrepresentation by L. Stahl & Co., knowingly made, as to the amount of goods or stock possessed by them, or the amount of money possessed or controlled by them at the time of the execution of said composition agreement, would be such misrepresentation as would, in law, avoid said agreement, as defined in plaintiffs' instruction No. 1.

" The court instructs the jury that in the effecting of composition agreements the utmost good faith on the part of the debtor is demanded, and that if the same be obtained by partial or unfair statements of their effects, or by fraudulently concealing portions of said effects, then the same are void in law.

" The jury are further instructed, that unless they are satisfied from the evidence that Alvina Abrams bought or obtained an interest in the firm of L. Stahl & Co. by means of funds, being her own exclusively, then the law presumes that any amount so invested by her was furnished by her husband, Bernard Abrams, and said defendant Abrams is liable in law for the debts of said firm created during the continuance of the same.

" The jury are instructed that if they shall find from the evidence that the defendant Bernard Abrams, at the time of the purchase of goods from plaintiffs by the firm of L. Stahl & Co., either was in fact a member of said firm, or held himself out, or allowed himself to be held out, as such to plaintiffs, then he is liable in this action for the price of

said goods, as well as the defendant Stahl, if the finding of the jury shall otherwise be in favor of plaintiffs.

"If the jury find for plaintiffs they will assess their damages at the balance claimed in plaintiffs' petition, together with interest on said balance from the first day of March, 1878, at the rate of six per centum per annum until this day."

The following instructions were given for the defendants: —

"If the jury believe from the evidence that the plaintiffs have not proven the allegations of fraud and concealment set up in their reply to defendants' answer, they should find for plaintiffs for the amount of the notes which were given in settlement and compromise of the account, $234 and interest, amounting to $———, without costs.

"The court instructs the jury that they cannot find for the plaintiffs unless they believe from the evidence that on the third day of November, 1877, when the compromise was made, the defendants concealed and had hidden the goods and money which plaintiffs charge that they had concealed, and that the goods and money were hidden and concealed with intent to defraud the plaintiffs into making a compromise at a smaller percentage than they would otherwise have accepted."

The defendants prayed for the following instructions, which were refused: —

"The jury must find for the defendants unless the concealment of the money and goods charged in the petition as concealed, occasioned a loss to plaintiffs, which plaintiffs would not have sustained had the concealment not taken place.

"If the jury believe from the evidence that the defendants and plaintiffs entered into the composition agreement read in evidence, and the plaintiffs' account or claim against the defendants was not due and payable, and the plaintiffs received the cash payment and notes spoken of in the agree-

ment, then the plaintiffs cannot recover in this action before or without tendering back the cash and notes so received.

"Before the jury can find for plaintiffs, the plaintiffs must prove the existence of the fraud they charge, by a preponderance of evidence, and must prove that the fraudulent misrepresentation of their assets by the defendants was the inducement to enter into the composition agreement, and that without that inducement the composition would not have been made."

We find no error in the action of the court upon these instructions. The verdict was for the plaintiffs.

The argument submitted for the defendants seems to proceed throughout upon an erroneous supposition that the case must be governed by the rules which would prevail in an action for damages on account of fraud and deceit. The plaintiffs' right of action, if any they have, stands upon no such footing. They sue on account of goods sold to the defendants. When met with the allegation of a composition and settlement, they simply deny the existence of any such composition or settlement, by reason of fraud in the transactions alleged, and fall back on their original claim. They have no need to aver or prove any loss or damage by the fraud. It is enough for them to show that, since there was fraud and misrepresentation, they are not hindered from recovering on their account for goods sold. Nor is there, under such circumstances, any need for a rescission, as is shown in *Bank of Commerce* v. *Hoeber*, 8 Mo. App. 171.

The first instruction given for plaintiffs is not open to the objection of permitting a recovery by the plaintiffs although there was no fraud on the part of the defendants. If, as a consequence of defendants' statements and representations, the plaintiffs were by the defendants "knowingly" left under a misapprehension or mistake as to the condition of defendants' estate, the fraud therein is quite as apparent as if it were perpetrated by a more direct act.

The fourth instruction given for plaintiffs states the law correctly. The plaintiffs could not be estopped to claim the benefits of its application, by anything contained in a deed which they repudiated as fraudulent and void.

The first two instructions refused to defendants were founded on the assumed analogy with an action for damages, and were of course inapplicable, and properly denied. The third was unnecessary, as it contained nothing more than was embodied in the instructions already given.

It is of no consequence that the defendants' indebtedness was not due at the time of the composition and part-payment. The parties had a right to anticipate the maturity of the debt, and did so. A debtor cannot recover back money thus paid, unless, possibly, upon a showing of fraud in creditors, of which there is no pretence in the present case. At all events, the debt was matured when this suit was brought, and it would be strange indeed if the defendants could plead a set-off or counter-claim for money paid on their own indebtedness.

The judgment will be affirmed. The other judges concur.